O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| Russell Corby, | ) ) | Case No. CV 10-05575 ODW (JCx) |
| Plaintiff, | ) ) | Order **GRANTING in Part** and |
| v. | ) ) ) | **DENYING in Part** Defendant's Motion for Summary Judgment [42] [Filed 07/18/11], **GRANTING** |
| American Express Co., *et al.*, | ) ) | Defendant's Motion to Strike Expert and Expert Report [45] [Filed |
| Defendants. | ) ) ) | 08/11/11], and **DENYING** Plaintiff's Motion for Relief [46] [Filed |
| _____ | ) | 08/15/11] |

## I.    INTRODUCTION

Pending before the Court is Defendant, American Express Bank, FSB's ("American Express" or "Defendant"), Motion for Summary Judgment.  (Dkt. No. 45.) Plaintiff, Russell Corby ("Plaintiff"), filed an Opposition on August 22, 2011, to which Defendant filed a Reply on August 29, 2011.  (Dkt. Nos. 49, 50.)  Having considered the papers filed in support of and in opposition to the instant Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.  For the following reasons, Defendant's Motion is **GRANTED in Part** and **DENIED in Part**. Additionally, Defendant's Motion to Strike the Expert Report of Thomas A. Tarter is

1

**GRANTED** and Plaintiff's Motion for Relief form the Court's Scheduling and Case Management Order pursuant to Federal Rule of Civil Procedure 60(b)(1) is **DENIED**.[1]

## II.   BACKGROUND

This case arises out of a dispute between Plaintiff and American Express regarding an outstanding amount due on Plaintiff's American Express Business Gold Card account (the "Account"), to which he allegedly made regular and timely payments until approximately mid-2008.  (PSGI No. 1; DSUF No. 1.)[2]   As of November 9, 2008, the Account balance was $41,166.92, with a past due amount of $22,515.07.  (Garabedian Decl., Exh. B.)  In an attempt to resolve Plaintiff's debt and return his account to current status, on November 23, 2008, American Express sent a letter to Plaintiff detailing a proposed  payment plan (the "Payment Plan Letter").  (PSGI No. 3; DSUF No. 4.)  The Payment Plan Letter states, in pertinent part:

---

[1]  In conjunction with his Opposition, Plaintiff submits the expert report of Thomas A. Tarter, which was served on Defendant on July 27, 2011.  (Corby Decl., Exh. 17a.)  Defendant objects to this report, (Dkt. No. 50-2), and moves to strike it, claiming that it was untimely filed, (Dkt. No. 45).  Conversely, Plaintiff moves the Court for relief pursuant to Federal Rule of Civil Procedure 60(b)(1), claiming that the report was filed in an untimely fashion due to a calendaring error.  (Dkt. No. 46.)

After the district court has filed a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16, a party seeking to amend a pleading after a date specified in the scheduling order must show good cause.  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-09 (9th Cir.1992); Fed. R. Civ. P. 16(b)(4).  When considering whether a party has demonstrated good cause, "the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, [but] the focus of the inquiry is upon the moving party's reasons for seeking the modification." *Id.* at 609.  The Court must "primarily consider[] the diligence of the party seeking amendment" and should only modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension."  *Id.*  If the party seeking the modification "was not diligent, the inquiry should end" and the motion to modify should not be granted.  *Id.*

Here, pursuant to the Court's October 22, 2010 Scheduling and Case Management Order, the discovery cut-off deadline was July 25, 2011.  (*See* Dkt. No. 26.)  Therefore, on its face Plaintiff's report is untimely.  Because Plaintiff missed the deadline by only two days, allegedly due to a calendaring error, the Court may have been inclined to grant Plaintiff's request for relief.  However, Plaintiff also failed to designate Thomas A. Tarter as an expert, which was required to be completed eight weeks prior to the discovery cut-off.  This failure certainly cannot be attributed to a calendaring error and exhibits that Plaintiff was not diligent in complying with the Court's Scheduling and Case Management Order.  Accordingly, the Court hereby **GRANTS** Defendant's Motion to Strike the Expert Report of Thomas A. Tarter and **DENIES** Plaintiff's Motion for Relief pursuant to Federal Rule of Civil Procedure 60(b)(1).  The Court has not considered Thomas A. Tarter's report in its ruling on the instant Motion.

[2]  The Court refers to Defendant's Statement of Undisputed Facts ("DSUF"), (Dkt. No. 42-2), to which Plaintiff filed a response, Plaintiff's Statement of Genuine Issues ("PSGI"), (Dkt. No. 49-1).  Defendant then filed a reply, Response to Plaintiff's Statement of Genuine Issues ("DRPSGI").  (Dkt. No. 50-1.)

2

We are writing to make you aware of a payment plan that may help you resolve your debt with American Express.

This is a unique opportunity in which you will be able to return your account to a current (non-delinquent) status through a payment plan, over a specified period of time. Also, as long as you comply with the terms of the plan, you will receive the following assistance:

• If applicable, your Annual Percentage Rate will be lowered, and
• You will not be charged for additional late fees or over-limit fees, if applicable, that may otherwise accrue on your account while you are covered by the plan

We hope that you seriously consider the benefits of this offer. Please call us today at the number on the back of your Card to discuss your participation. We are available to assist you with your account at any time.

(Corby Decl., Exh. 1; Garabedian Decl., Exh. C.) In response to this letter, Plaintiff contacted American Express via telephone twice on November 26, 2008. (PSGI No. 5; Corby Decl, Exh. 2.) Plaintiff alleges that during the November 26, 2008 phone conversations, the parties reached an agreement whereby the Account was placed on a twelve-month payment plan, with reduced payments to begin on December 4, 2008. (PSGI Nos. 5, 6.) Plaintiff further alleges that the agreement provided that American Express would not report Plaintiff to any credit reporting agencies ("CRAs") during the twelve-month plan, provided that he made his payments. (PSGI No. 7.) While American Express concedes that an agreement was indeed reached, (DRPSGI No. 9; Corby Decl., Exh. 4 at 8), it disputes the terms of the agreement. Specifically, American Express asserts that it never agreed to any terms that were not set forth in the November 23, 2008 letter, including its alleged concession to refrain from reporting Plaintiff to the CRAs. (DRPSGI Nos. 5-9.)

Notwithstanding this dispute, Plaintiff made payments to the Account in the amount of $3,470.00 each month from December 2008 until July 2009. (PSGI No. 9; Garabedian Decl., Exh. B.) Plaintiff contends, and Defendant does not dispute, that American Express did not report any negative activity to any of the CRAs until July 2009. (PSGI No. 11; DRPSGI No. 11.) Plaintiff's credit report indicates that on July 3, 2009, American Express "charged off" the Account. (Corby Decl., Exh. 5.) Although Plaintiff contacted American Express on July 3, 2009 regarding the dispute, (PSGI No.

3

13; DRPSGI No. 13), he first informed Experian of the dispute in a letter dated April 4, 2010, (DSUF No. 17).

As a result of the foregoing events, on July 27, 2010, Plaintiff filed a Complaint in this Court against American Express, Transunion Corp., Equifax, Inc., and Experian Information Solutions, Inc. (collectively, "Defendants"),[3] alleging claims for violation of the Fair Credit Reporting Act (the "FCRA") and violation of the California Rosenthal Fair Debt Collection Practices Act (the "RFDCPA"). (Dkt. No. 1.) Thereafter, on May 9, 2011, pursuant to the parties' stipulation, the Court dismissed Defendants, Equifax, Inc.; Experian Information Solutions, Inc.; and TransUnion Corp. from the case. (Dkt. No. 41.) Consequently, American Express is the only remaining Defendant in this case.

Plaintiff contends that, as a result of American Express's alleged wrongful conduct, Plaintiff was unable to obtain credit, which, in turn, prevented him from "expanding his business." (Corby Decl. ¶ 19.) In this regard, Plaintiff claims that his inability to obtain credit prevented him from obtaining bidder bonds for and/or completing several projects, including:

1. The Fresno County Sheriff/Department of Homeland Security System Project in 2009, which had an "estimated potential net loss" of $350,000. (Corby Decl. ¶ 19a.)
2. The West L.A. College Project in November 2009, which had an estimated net loss of $55,000. (Corby Decl. ¶ 19b.)
3. The Apple Construction Project in February 2010, which had an estimated net loss of $23,000. (Corby Decl. ¶ 19c.)
4. The Bedrosians Marble & Tile Project in May 2010, which had an estimated loss of $25,000. (Corby Decl. ¶ 19d.)

Additionally, Plaintiff claims his inability to obtain credit caused the following:

1. Plaintiff's inability to lease a Toyota Camry in October 2009. (Corby Decl. ¶ 20a.)
2. Plaintiff's inability to send his two children to private high school. (Corby Decl. ¶ 20b.)
3. The sale of Plaintiff's motor home to cover living expenses. (Corby Decl. ¶ 20c.)

[3] On March 24, 2011, the Court granted Plaintiff's Motion to File a First Amended Complaint to add Equifax Information Services. (Dkt. No. 39.) Plaintiff, however, chose not to amend his Complaint in this respect.

4

4.   "Embarrassment, humiliation, emotional upset [sic] and feelings of extreme frustration[,]" which purportedly caused "chronic fatigue[,]" and "continual stress and pressure."   Additionally, Plaintiff was allegedly able to sleep only "a couple of hours each night for 12 to 18 months[.]"  (Corby Decl.  ¶¶ 21-23.)

In response to these allegations, on August 23, 2010, American Express filed an Answer, which contained counterclaims for breach of contract, unjust enrichment, and account stated. (Dkt. No. 12.)  American Express now moves for summary judgment, or in the alternative, for summary adjudication as to Plaintiff's claims and American Express's counterclaims.  The Court discusses the merits of Defendant's Motion below.

### III.   LEGAL STANDARD

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  That burden may be met by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.  Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and identify specific facts that show a genuine issue for trial. *Id*. at 323-34; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968).  Summary judgment is appropriate if a party, after adequate time for discovery, "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp*., 477 U.S. at 322.

Only genuine disputes over facts that might affect the outcome of the suit will properly preclude the entry of summary judgment.  *Anderson*, 477 U.S. at 248; *see also Aprin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (the nonmoving party must present specific evidence from which a reasonable jury could return a verdict in its favor). "A scintilla of evidence or evidence that is merely colorable

1    or not significantly probative does not present a genuine issue of material fact." *Addisu*

2    *v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000).

3         Moreover, it is not the task of the district court "to scour the record in search of a

4    genuine issue of triable fact. [Courts] rely on the nonmoving party to identify with

5    reasonable particularity the evidence that precludes summary judgment." *Keenan v.*

6    *Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also Carmen v. San Francisco Unified*

7    *Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) ("The district court need not examine the

8    entire file for evidence establishing a genuine issue of fact, where the evidence is not set

9    forth in the opposing papers with adequate references so that it could conveniently be

10   found.").

11        When ruling on a motion for summary judgment, the Court may consider evidence

12   including the pleadings, discovery and disclosure materials, and any affidavits on file.

13   Fed. R. Civ. P. 56(c)(2).  The evidence presented by the parties must be admissible. Fed.

14   R. Civ. P. 56(e).  Conclusory or speculative testimony in affidavits and moving papers

15   is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill*

16   *Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).  Conversely,

17   a genuine dispute over a material fact exists if there is sufficient evidence supporting the

18   claimed factual dispute, requiring a judge or jury to resolve the differing versions of the

19   truth. *Anderson*, 477 U.S. at 248-49.

20                           **IV.   DISCUSSION**

21        American Express seeks summary judgment as to both Plaintiff's FCRA claim and

22   Plaintiff's RFDCPA claim.  The Court begins it discussion by indicating which sections

23   of the FCRA are implicated in this case.  Next, the court addresses American Express's

24   liability under the FCRA.  Finally, the Court determines whether the RFDCPA is

25   preempted by the FCRA.

26        **A.   PRIVATE RIGHTS OF ACTION UNDER THE FAIR CREDIT REPORTING ACT**

27              **AGAINST A "FURNISHER OF INFORMATION"**

28        The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x, was enacted

     to "to ensure fair and accurate credit reporting, promote efficiency in the banking system,

and protect consumer privacy." *Gorman v. Wolpoff & Abramson*, 584 F.3d 1147, 1153 (9th Cir. 2009) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 127 S.Ct. 2201, 2205 (2007)).   In addition to regulating consumer reporting agencies ("CRAs") to guarantee that consumer information is assembled, evaluated, and disseminated with "fairness, impartiality, and a respect for the consumer's right to privacy," the FCRA also "imposes some duties on the sources that provide credit information to CRAs[.]" *Id.* These sources, which the statute refers to as "furnishers of information," are most commonly "credit card issuers, auto dealers, department and grocery stores, lenders, utilities, insurers, collection agencies, and government agencies." *Id.* at 1154 n.3 (quoting H.R.Rep. No. 108-263, at 24 (2003)).   Here, the gravamen of Plaintiff's complaint is that American Express wrongfully furnished information about Plaintiff to the CRAs, and subsequently failed to properly investigate the dispute.   Thus, under the FCRA, American Express is a furnisher of information.[4]

Furnishers of information are subject to two distinct categories of responsibilities under 15 U.S.C. § 1681s-2.  *See id.*  First, under subsection (a), furnishers have a duty to "provide accurate information," which, among other things, (1) prohibits reporting of information with actual knowledge of errors or after receiving notice of errors, *see* § 1681s-2(a)(1); (2) imposes a duty to correct and update inaccurate or incomplete information, *see* § 1681s-2(a)(2); and (3) imposes a duty to notify CRAs if any information reported has been disputed by the consumer, *see* § 1681s-2(a)(3).  It is well-settled, however, that there is no private right of action for violations of § 1681s-2(a). *See* 15 U.S.C. *see* § 1681s-2(c) (stating that sections 1681n and 1681o, which confer a private right of action for willful or negligent noncompliance, "do not apply to any violation of – (1) subsection (a) of this section, including any regulations issued thereunder"); *see also Gorman*, 584 F.3d at 1154 ("Duties imposed on furnishers under subsection (a) are enforceable only by federal or state agencies.").  Second, furnishers of

---

[4] To the extent Plaintiff argues that he raises claims against American Express other than those under § 1681s-2, (Opp'n at 16: 24-26), which applies to furnishers of information, he fails to articulate which other sections of the FCRA he seeks to invoke, and fails to present any evidence supporting a contention that American Express's role in the instant matter is anything other than as a "furnisher of information."

information have certain obligations, which are "triggered 'upon notice of dispute' – that is, when a person who furnished information to a CRA receives notice from the CRA that the consumer disputes the information." *Gorman*, 584 F.3d at 1154 (citing 15 U.S.C. § 1681i(a)(2)).  Such notice must be given to the furnisher by the CRA; "notice of a dispute received directly from the consumer does not trigger furnishers' duties under subsection (b)." *Id.* (citing § 1681s-2(b)(1); *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1059-60 (9th Cir. 2002)).  After receiving the requisite notice, a furnisher must:

> (A) conduct an investigation with respect to the disputed information;
> (B) review all relevant information provided by the [CRA] pursuant to section 1681i(a)(2) . . . ;
> (C) report the results of the investigation to the [CRA];
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other [CRAs] to which the person furnished the information . . . ; and
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1) . . . (i) modify . . . (ii) delete [or] (iii) permanently block the reporting of that item of information [to the CRAs].

§ 1681s-2(b)(1); *see also Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1059 (9th Cir. 2002) (stating the same requirements).  The FCRA allows a private right of action for claims arising under § 1681s-2(b)(1).  *See Gorman*, 584 F.3d at 1154 (citing 15 U.S.C. § 1681s-2(c)).

**B.     AMERICAN EXPRESS'S LIABILITY AS A "FURNISHER OF INFORMATION"**

In light of the above, Plaintiff, as an individual, may only bring a claim against American Express for violation of § 1681s-2(b)(1).  First, Plaintiff must show that American Express failed to comply with the provisions of § 1681s-2(b)(1).  *See Johnson v. Wells Fargo Home Mortg., Inc.*, 558 F. Supp. 2d 1114, 1121 (D. Nev. 2008).  Second, Plaintiff must show that he is entitled to damages, sustained as a result of American Express's conduct.  *See id.*

As stated above, to establish a violation of § 1681s-2(b)(1), Plaintiff must show that, after receiving notice from a CRA, American Express failed to "conduct an 'investigation with respect to the disputed information;' to review all relevant information

provided by the CRA; to report the results of its investigation to the CRA; and if the investigation finds the information is incomplete or inaccurate to report those results 'to all [nationwide] consumer reporting agencies to which the person furnished the information.'" *Nelson*, 282 F.3d at 1059.

Plaintiff fails to present any evidence that he reported the dispute to Experian, or any other CRA, prior to April 4, 2010.  Indeed, Plaintiff admits that April 2010 is "the date Plaintiff gave notice to the CRAs."  (Opp'n at 16.)  Thus, the Court finds that American Express is not liable under the FCRA for any alleged violation or resulting damages occurring before it received notice on or after April 4, 2010, including:

1. The Fresno County Sheriff/Department of Homeland Security System Project in 2009, which had an "estimated potential net loss" of $350,000.  (Corby Decl. ¶ 19a.)
2. The West L.A. College Project in November 2009, which had an estimated net loss of $55,000.  (Corby Decl. ¶ 19b.)
3. The Apple Construction Project in February 2010, which had an estimated net loss of $23,000.  (Corby Decl. ¶ 19c.)
4. The inability to lease a Toyota Camry in October 2009. (Corby Decl. ¶ 20a.)
5. The sale of Plaintiff's motor home to cover living expenses in July 2009. (Corby Decl. ¶ 20c; DSUF No. 16.)

In addition to the abovementioned damages, Plaintiff claims damages in connection with the following, which allegedly occurred after April 4, 2010:

1. The Bedrosians Marble & Tile Project in May 2010, which had an estimated loss of $25,000.  (Corby Decl.  ¶ 19d.)
2. Plaintiff's inability to send his two children to private high school. (Corby Decl. ¶ 20b.)
3. "Embarrassment, humiliation, emotional upset [sic] and feelings of extreme frustration[,]" which purportedly caused "chronic fatigue[,]" and "continual stress and pressure."  Additionally, Plaintiff was allegedly able to sleep only "a couple of hours each night for 12 to 18 months[.]"  (Corby Decl. ¶¶ 21-23.)

As to the Bedrosians Marble & Tile Project in May 2010, while it occurred after April 4, 2010, Plaintiff specifically admits that it was caused by American Express's alleged wrongful *reporting*, for which Plaintiff cannot sustain a private right of action under § 1681s-2(a).  Specifically, Plaintiff states in his declaration: "My avenue of credit was cut off starting in June 2009 with the erroneous credit *reporting* by American

9

Express.  This prevented me from expanding my business . . . [and] contributed to at least the following . . . Bedrosians Marble & Tile Project in May 2010."  (Corby Decl. ¶ 19d. (emphasis added.)   In light of this admission, the Court finds that Corby's damages related to the Bedrosians Marble & Tile Project are precluded because they arise from an alleged violation of § 1681s-2(a), for which Plaintiff cannot maintain a private right of action.[5]

As to the remaining damages, in the absence of an admission as described above, it is questionable whether these damages were sustained as a result of American Express's alleged wrongful *reporting* or as a result of American Express's failure to *investigate* after receiving notice from Experian.  Furthermore, to the extent American Express argues that Plaintiff fails to present evidence of a causal link between his damages and American Express's alleged conduct, the Court finds that disputed issues of material fact exist.  On one hand, Plaintiff presents declarations, which he contends indicate that American Express's conduct caused his damages.  (*See generally* Corby Decl.; M. Corby Decl.)   On the other hand, American Express interprets these declarations to attribute Plaintiff's damages to the "nationwide economic shutdown" and Plaintiff's own "financial situation."  (Reply at 10.)  These conflicting interpretations as to whether Plaintiff's damages were caused by American Express's conduct, in whole or in part, cannot be resolved at this stage of the litigation.  *See Anderson*, 477 U.S. at 248-49 ("the issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.").

---

[5]  The parties dispute whether the FCRA allows Plaintiff to recover damages related to his business.  On one hand, Defendant contends that, because the FCRA is designed to protect consumers, it precludes all business-related damages.  (Mot. at 9.)  On the other hand, Plaintiff asserts that business-related damages are recoverable under the FCRA in certain circumstances.  The Court need not reach a determination on this issue because, as discussed above, Plaintiff's damages allegedly sustained in connection with his business either occurred prior to American Express receiving notice of the dispute from a CRA or were sustained as a result of American Express's *reporting* activities.

In light of the foregoing, the Court **GRANTS in Part and DENIES in Part** Defendant's Motion for Summary Judgment as it relates to Plaintiff's FCRA claim. Whether American express violated § 1681s-2(b) and is liable for the resulting damages – namely, Plaintiff's emotional distress damages and the damages he personally sustained by being unable to send his children to private school – is a question of fact. Consequently, summary judgment is **DENIED** as to Plaintiff's claim under § 1681s-2(b). Conversely, Plaintiff cannot maintain a private right of action under § 1681s-2(a), and summary judgment is **GRANTED** with respect to all liability and damages sustained as a result of American Express's alleged wrongful conduct under this section.

## C.   PLAINTIFF'S RFDCPA CLAIM IS PREEMPTED BY THE FCRA

Pursuant to the Supremacy Clause of the Constitution, state laws which conflict with federal law are ineffectual and void.  U.S. Const. Art. VI, cl. 2; *Altria Group, Inc. v. Good*, 129 S.Ct. 538, 543 (2008).  Express preemption, which is one of three types of preemption, occurs "when Congress enacts a statute that expressly commands that state law on the particular subject is displaced." *Siaperas v. Montana State Compensation Ins. Fund*, 480 F.3d 1001, 1004 (9th Cir. 2007) (quoting *Gadda v. Ashcroft*, 377 F.3d 934, 944 (9th Cir. 2004)).  "When a federal law contains an express preemption clause, [courts should] 'focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent.'"  *Chamber of Commerce of U.S. v. Whiting*, 131 S.Ct. 1968, 1977 (2011) (quoting *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993)).

Here, Plaintiff brings claims under both the FCRA and the RFDCPA.  The FCRA, however, contains an express preemption clause which states: "[n]o requirement or prohibition may be imposed under the laws of any State . . . relating to the responsibilities of persons who furnish information to consumer reporting agencies, except with respect to section 54(a) of chapter 93 of the Massachusetts Annotated Laws; or with respect to section 1785.25(a) of the *California Civil Code* . . . ."  15 U.S.C. § 1681t(b)(1)(F).  This constitutes an express preemption of any state law that regulates liability for furnishers

1   of information to the credit reporting agencies.  Plaintiff's state law claim under the
2   RFDCPA incorporates section 1692e(8) of the Fair Debt Collection Practices Act, which
3   proscribes "[c]ommunicating . . . to any person credit information which is known or
4   which should be known to be false, including the failure to communicate that a disputed
5   debt is disputed." 15 U.S.C. 1692e(8).  The plain language of the FCRA clearly preempts
6   such a state claim, unless it is brought under *California Civil Code* section 1785.25(a).
7   *See* 15 U.S.C. § 1681t(b)(1)(F).  Because Plaintiff expressly states his second claim is
8   grounded in the RFDCPA, not *California Civil Code* section 1785.25(a), (Compl. at 8),
9   it is preempted by the FCRA.  *See, e.g. Johnson v. JP Morgan Chase Bank*, 536 F. Supp.
10  2d 1207, 1215 (E.D. Cal. 2008) (holding that the FCRA "precludes all statutory or
11  common law causes of action that would impose any requirement or prohibition on the
12  furnishers of credit"); *Roybal v. Equifax*, 405 F. Supp. 2d 1177, 1181 (E.D. Cal. 2008)
13  ("[o]n its face, the FCRA precludes all state statutory or common law causes of action
14  that would impose any requirement or prohibition on the furnishers of credit
15  information"); *Pacheco v. Citibank (South Dakota), N.A.*, No. C 07-01276 JSW, 2007
16  WL 1241934, at *5-7 (N.D. Cal. Apr. 27, 2007) ("[a]ny state statutory or common law
17  claims premised on the provision of inaccurate or false information to a consumer
18  reporting agency are . . .  preempted by the FCRA"); *Davis v. Md. Bank, N.A.*, No. C
19  00-04191 SBA, 2002 WL 32713429, at *36-40 (N.D. Cal. June 19, 2002) ("section
20  1681t(b)(1)(F) preempts both state statutory and common law causes of action which
21  implicate the subject matter of section 1681s-2").
22          Therefore, the Court finds that Plaintiff's claim under the RFDCPA is preempted
23  by the FCRA.

24          **D.      AMERICAN EXPRESS'S COUNTERCLAIMS**
25          Asserting that it is entitled to judgment as a matter of law because it properly
26  reported Plaintiff to the CRAs, American Express seeks summary judgment with respect
27  to its counterclaims for breach of contract, unjust enrichment, and account stated.
28

First, to establish breach of contract under California law, American Express must show: (1) the existence of a contract, (2) American Express's performance or excuse for nonperformance, (3) Plaintiff's breach of the contract; and (4) resulting damage to American Express. *See Walsh v. W. Valley Mission Cmty Coll. Dist*., 66 Cal. App. 4th 1532, 1545 (Ct. App. 1998).   American Express fails to establish the second element. Specifically, Plaintiff contends that American Express failed to perform its obligations under the alleged oral agreement, which included refraining from reporting Plaintiff to the CRAs.   American Express's contention that it properly reported Plaintiff is based on both the Payment Plan Letter and the terms of the Cardmember Agreement.   (Mot. at 6.) With respect to the Cardmember Agreement, American Express asserts that the "supposed oral conversation – even if true – cannot be a basis to contradict the clear and ambiguous language contained in the Cardmember Agreement," (Mot. at 8), which states, in pertinent part:

> This written Agreement is a final expression of the agreement between the creditor and the debtor and the written Agreement may not be contradicted by any evidence of any alleged oral agreement.

(Garabedian Decl., Exh. A.)   The Cardmember Agreement does not contain Plaintiff's name or signature, nor is it dated.   (DRPSGI No. 18.)   Indeed, Plaintiff contends that Cardmember Agreement presented by American Express does not reflect the actual agreement of the parties.   (Opp'n at 8 n.3; PSGI No. 18.)   In this respect, Plaintiff does not recall receiving the Cardmember Agreement, reading it, or agreeing to its terms. (PSGI No. 18.)   Thus, it is questionable whether the terms of the Cardmember Agreement are binding on the parties.

Assuming *arguendo* that the terms are binding, American Express explicitly agreed to an oral modification of the Cardmember Agreement and/or invited Plaintiff to enter into a new contract by virtue of the Payment Plan Letter.   Indeed, the Payment Plan Letter states: "Please call us today at the number on the back of your Card to discuss your participation."   (Corby Decl., Exh. 1; Garabedian Decl., Exh. C.)   By asking Plaintiff to

call to discuss his participation in a payment plan, American Express specifically invited Plaintiff to *verbally* negotiate.   Therefore, American Express is now estopped from holding Plaintiff to those terms that it expressly invited discussions with Plaintiff to modify.

With respect to the Payment Plan Letter, American Express states that "the only assistance offered in the [letter] was lowering [Plaintiff's] APR and not charging any additional late fees or over-limit fees.  There is no mention in the [letter] – or any other documentation produced in this matter – relating to [Plaintiff's] allegations regarding credit reporting." (Mot. at 6.)  American Express is correct.  There is no documentation to support Plaintiff's allegations.  There is, however, other evidence that, when viewed in the light most favorable to Plaintiff, tends to show the existence of an agreement not to report him to the credit reporting agencies – namely, American Express's own actions. Indeed, for eight months after the alleged oral agreement, American Express accepted Plaintiff's reduced payments in the amount of $3,740.00 and did not report Plaintiff to any credit reporting agencies.  While such actions do not conclusively establish the terms of the alleged oral agreement, they are certainly persuasive evidence of its existence.

In sum, the Court finds that there are genuine issues of material fact as to whether the parties entered into an agreement, whereby American Express orally agreed to refrain from reporting Plaintiff to the credit reporting agencies.   Specifically, if American Express agreed not to report Plaintiff to the credit reporting agencies, and then subsequently reported  in violation of that agreement, it did not honor its obligations under the agreement.  This determination cannot be resolved by the Court at this stage of the litigation.  Rather, it must be reserved for the trier of fact.

Second, "[a]lthough some California courts have suggested the existence of a separate cause of action for unjust enrichment, [California courts have] recently held that '[t]here is no cause of action in California for unjust enrichment.'  Unjust enrichment is synonymous with restitution." *Levine v. Blue Shield of California*, 189 Cal. App. 4th

14

1117, 1138 (Ct. App. 2010) (citations omitted).  Thus, American Express cannot properly bring a claim for unjust enrichment.  Furthermore, because American Express has not established that it is entitled to recovery under its breach of contract theory, it is also not entitled to restitution at this time.

Third, American Express concedes that a claim for account stated is appropriate when "the creditor renders a statement on the account to the debtor and if the debtor fails to object to the statement within a reasonable time, the law implies his agreement that the account is correct as rendered."  (Mot. at 22-23.)  In light of the facts of this case, which indicate that Plaintiff disputed his debt with American Express as of July 3, 2009, (PSGI No. 13; DRPSGI No. 13), Defendant's claim for account stated fails.

In light of the foregoing, summary judgment on Defendant's counterclaims is **DENIED**.

## V.   CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED in Part** and **DENIED in Part**. Specifically, the Court **GRANTS** summary judgment as to Plaintiff's claims arising under § 1681s-2(a) of the FCRA, and as to Plaintiff's claim under the RFDCPA. Further, the Court **DENIES** summary judgment as to as to Plaintiff's claims arising under § 1681s-2(b) of the FCRA, and as to Defendant's counterclaims. Additionally, Defendant's Motion to Strike the Expert Report of Thomas A. Tarter is **GRANTED** and Plaintiff's Motion for Relief form the Court's Scheduling and Case Management Order pursuant to Federal Rule of Civil Procedure 60(b0(1) is **DENIED**.

**IT IS SO ORDERED.**

October 5, 2011

_____

HON. OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE